IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JACLYN SCHUERHOLZ            *
                             *
v.                           *    Civil Action No. WMN-15-1990
                             *
EUGENE COKER et al.          *

    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *

**MEMORANDUM**

    Before the Court is a Motion for Summary Judgment filed by
Defendant Officers Eugene Coker and Ricardo Cabreja.  ECF No.
61.  The motion is fully briefed.  Upon review of the motion and
the applicable case law, the Court determines that no hearing is
necessary, Local Rule 105.6, and that the motion must be
granted.

    This case arises out of an incident that occurred late in
the evening of August 25, 2013, in Baltimore's Fells Point
neighborhood.  Plaintiff's account and Defendants' account of
the incident differ as to many of the details, but the parties
do agree as to the following.  Plaintiff and a male friend,
Jeffery Machiran, took a taxi cab from a Fells Point bar where
they had been drinking and socializing with friends but
discovered at some point that they did not have any means by
which to pay the cab driver.  Defendants Coker and Cabreja, who
are Baltimore City Police Officers, were summoned to the scene
and, by the end of their encounter with the couple, Plaintiff

and Mr. Machiran were arrested for "Disorderly Conduct" and "Theft, Less than $100."

Plaintiff filed a Complaint in the Circuit Court for Baltimore City alleging that, in the course of her arrest, Officers Coker and Cabreja utilized excessive force which caused her "severe physical and emotional trauma that continues to this date." Compl. ¶ 14 (ECF No. 2). She alleges that her injuries "include, but are not limited to seven broken ribs, a collapsed lung, contusions, anxiety, emotional distress, etc." Id. As causes of action, she asserted claims of battery (Count 1); violations of Articles 16, 19, and 24 of the Maryland Declaration of Rights (Count 2); negligence (Count 3); and violations of the Fourth, Eighth and Fourteenth Amendments of the United States Constitution, those claims being brought pursuant to 42 U.S.C. § 1983 (Count 4). In addition to Officers Coker and Cabreja, Plaintiff named as Defendants the Mayor and City Council of Baltimore (City) and the Baltimore City Police Department (BPD).

After the case was removed to this Court, Plaintiff filed a motion to remand and Defendants City and BPD filed motions to dismiss. On October 22, 2015, this Court issued a Memorandum and Order denying the motion to remand and granting the motions

to dismiss.[1]  ECF No. 31.  The City's motion was granted on the
ground that the BPD is an agency of the State of Maryland, and
not the City, and therefore the City has no liability based upon
the conduct of officers of the BPD.  The BPD's motion was
granted as to all of the Maryland state law claims on the ground
that, as a State agency, it has sovereign immunity against those
claims.  As to the federal constitutional claims, the Court
granted the motion after noting that there were no facts alleged
from which it could be concluded that the Officers' actions were
pursuant to any policy or custom of the BPD.  The Court also
noted that the Complaint stated no plausible Eighth Amendment
claim as that amendment is only applicable to convicted and
sentenced prisoners.  By that same reasoning, the Court
dismissed Count 4 as to the Officers to the extent the claim in
that count was premised on the Eighth Amendment.

After the discovery deadline passed, Defendant Officers
filed the pending Motion for Summary Judgment.  Their motion is
well supported with admissible evidence, including: a recording
of the 911 call; Plaintiff's discovery responses; medical
records; affidavits from both Defendants; the Statement of
Probable Cause for her arrest; and, perhaps of most

---

[1] Plaintiff never filed any opposition to these Motions to
Dismiss despite having twice asked for and being granted
extensions of time to allow her counsel to "further evaluate"
the motions.  ECF No. 19 at 1; ECF No. 29 at 2.

significance, the transcript of Plaintiff's deposition in which
Plaintiff made and was then confronted with numerous material
inconsistencies in her testimony.  This evidence submitted by
Defendant Officers details the following series of events.

At approximately 11:17 p.m. on the evening of August 25,
2013, the BPD received a 911 call from cab driver Rupert
Campbell.  Mot., Ex. E (audio file of 911 call).  In that call,
Mr. Campbell complained that two passengers, later identified as
Plaintiff and Mr. Machiran, after having used his cab "as a
hotel,"[2] were refusing to pay his fare.  Mr. Campbell also stated
that Mr. Machiran was making insulting comments and, during the
course of the call, an individual is heard arguing with Mr.
Campbell in the background.  Id.  From the content of the
exchange, that individual was clearly Mr. Machiran.

In response to the 911 call, Officer Coker arrived at the
Royal Farms store located at the corner of Dean Street and Fleet
Street and spoke with Mr. Campbell.  Coker Aff. ¶¶ 2, 3 (ECF No.
61-8).  Mr. Campbell reported that the couple had incurred a $13
fare which they were refusing to pay.  Id. ¶ 5.  A witness at
the scene, Phillip Atwood, confirmed that the couple had refused
to pay their fare and had given Mr. Campbell difficulty.  Id. ¶

---

[2] From Mr. Campbell's statements in the rest of the 911 call and
from his later statement to Officer Coker, it is clear that Mr.
Campbell was politely referring to the couple engaging in sex in
the back of his cab.

6.  Mr. Campbell then pointed in the direction of the 600 block
of South Dean Street where Plaintiff and Mr. Machiran had
drifted on foot and where they had been engaging in sexual
activity for the last five minutes.  Id. ¶ 7.  Officer Coker
then drove his marked police car to that location, which was
about a block away.  Officer Coker approached the couple and
observed Mr. Machiran with his head under Plaintiff's dress and
heard Plaintiff making sounds consistent with sexual
stimulation.  Id. ¶¶ 9, 10.  Officer Coker announced his
presence as "Baltimore Police" and Mr. Machiran removed his head
from under Plaintiff's dress.  Id. ¶ 11.

Officer Cabreja arrived at the scene about that time.  From
the couple's slurred speech and potent body odor, Officers Coker
and Cabreja quickly concluded that both Plaintiff and Mr.
Machiran were intoxicated.  Id. ¶ 14.  They explained that they
were responding to the cab driver's complaint about the unpaid
fare.  Mr. Machiran initially argued with the Officers but
eventually agreed to go with Officer Cabreja to the ATM in the
Royal Farms store to retrieve some cash to pay the fare.  Once
there, however, Mr. Machiran claimed that he did not have an ATM
or debit card with which to retrieve any cash.  Id. ¶¶ 17-18.
Officer Cabreja returned with Mr. Machiran to where Officer
Coker was waiting with Plaintiff.

The Officers continued their attempt to persuade the couple to pay their cab fare but Mr. Machiran responded with a profanity-laced tirade as to why he felt he did not need to pay Mr. Campbell the cab fare, including his making disparaging comments regarding Mr. Campbell's nationality.  Id. ¶¶ 19, 20. Mr. Machiran and Plaintiff also became increasing loud and boisterous despite the Officers' attempts to persuade them to lower their voices.  When the couple refused to adjust their behavior, Officer Coker placed them in handcuffs.  Id. ¶¶ 23, 24.  Concerned that the couples' continued disruptive and loud behavior was disturbing this residential neighborhood, the Officers moved them closer to the Royal Farms store while awaiting the transport wagon to take them to the Central Booking Intake Facility.

While waiting for that transport, "[o]n several occasions, Plaintiff attempted to rise to her feet.  Each time, [Officer Coker] returned Plaintiff to a seated position."  Id. ¶ 28. This continued for approximately ten minutes as Plaintiff continued to yell out and try to get up.  Cabreja Aff. ¶ 19 (ECF No. 61-10).  When the transport arrived, the Officers had to physically lift and force the Couple into the transport vehicle. Id. ¶ 21.  Mr. Campbell was never paid for his services.  The subsequent charges against Plaintiff of "Disorderly Conduct" and "Theft, Less than $100" that arose from this incident were

eventually <u>nol prossed</u> in exchange for Plaintiff's agreement to do 25 hours of community service.  Eastside District Court Record (ECF No. 61-11).

In moving for summary judgment, Defendant Officers make the following legal arguments.  Defendants argue that all claims against Officer Cabreja must be dismissed because Plaintiff stated in her deposition that it was Officer Coker who assaulted her but made no similar claim against Officer Cabreja.  Pl.'s Dep. 134-35 (ECF No. 67-3).  Defendants argue that the claim of battery against Officer Coker should be dismissed as well because police officers "'have the right to take reasonably necessary measures to make the arrest in a manner that protects both the public and themselves,'" and  "'[i]n doing so, they may use some degree of force.'"  ECF No. 61-1 (quoting <u>Tavakoli-Nouri v. State</u>, 779 A.2d 992, 1001 (Md. Ct. Spec. App. 2001)).  In light of the couple's continued disruptive behavior and Plaintiff's continued efforts to stand up after she was instructed to remain seated, Defendants contend that the limited force applied was reasonable.

In arguing that Plaintiff's claims under the Maryland Declaration of Rights must be dismissed, Defendant Officers highlight the somewhat careless pleading of Plaintiff's counsel. The Complaint invokes Article 16 which relates to capital punishment and cruel and unusual punishment which obviously has

7

no relation to this action.   Complaint also invokes Article 19
which relates to the right to a speedy trial, again, a provision
that is irrelevant to this action.   Similarly, Plaintiff's
counsel included a claim under the Eighth Amendment to the
United States Constitution that could have no possible relation
to this case.   The Eighth Amendment addresses excessive bail and
cruel and unusual punishment.   Plaintiff's counsel conceded in
the Opposition to the Motion for Summary Judgment that these
claims should be dismissed.   ECF No. 67-1 at 10.[3]

Plaintiff's negligence claim is also at odds with the
allegations in the Complaint.   It has long been established that
negligence is not an intentional tort but, instead, arises where
an individual's unintentional failure to use reasonable care
results in injury to another.   Adams v. Carey, 190 A. 815, 821
(Md. 1937) (noting that "the absence of intent is essential to
the legal conception of negligence").   Here, Plaintiff is
clearly alleging intentional conduct.   While there is a narrow
exception to the unintentional rule where an intentional act
causes an unintended harmful consequence, Ghassemeieh v.
Schafer, 447 A.2d 84, 89-90 (Md. Ct. Spec. App. 1982), that is
not what is alleged here.

---

[3] As noted above, in ruling on BPD's Motion to Dismiss, this
Court has already held that any claim premised on the Eighth
Amendment should be dismissed.

The remaining two claims, the excessive force claims under the Fourth Amendment to the United States Constitution and under Article 26 of the Maryland Declaration of Rights, unlike Plaintiff's other claims, are at least consistent with the allegations in the Complaint.  These federal and state excessive force claims are generally construed in pari materia with one another.  Gadson v. State, 668 A.2d 22, 26 n.3 (Md. 1995).[4] Excessive force claims under both are analyzed under the three factor "objective reasonableness" standard set out by the Supreme Court in Graham v. Conner, 490 U.S. 386, 388 (1989).

To establish their excessive force claim, Plaintiff must show that the force used by the Officers in making her arrest was not "objectively reasonable" in light of the facts and circumstances confronting them.  Graham, 490 U.S. at 397. Objective reasonableness is highly fact-specific and requires a "totality of the circumstances" analysis.  Tennessee v. Garner, 471 U.S. 1, 8-9 (1985).  "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake."  Graham, 490 U.S. at 396 (citation omitted).  The

---

[4] Claims under Maryland's Declaration of Rights, however, are not subject to the defense of qualified immunity.  Okwa v. Harper, 757 A.2d 118, 140 (Md. 2000).

Supreme Court in <u>Graham</u> set out the following three factors to be considered in conducting that analysis: (1) "the severity of the [suspected] crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether [s]he is actively resisting arrest or attempting to evade arrest by flight."  <u>Id.</u>

In moving for summary judgment, the Officers note that they were dealing with two highly intoxicated individuals who were disturbing the peace, late at night, in a residential neighborhood.  They were lawfully arrested for "Disorderly Conduct" and "Theft, Less than $100" and, while awaiting transport to Central Booking, Plaintiff continued to yell at the Officers and repeatedly tried to get up from her seated position, despite her being instructed to remain seated. Officer Coker's returning her to a seated position was a reasonable and measured response.  Furthermore, the fact that, by Plaintiff's own description, the Officers had to "lift[] and force[ her] into the wagon" is an indication that she was resisting the Officers.

In opposing summary judgment, Plaintiff's counsel makes no counterargument that Plaintiff could establish an excessive force claim under the facts as presented by the Officers. Instead, Plaintiff simply offers, through her deposition testimony and her affidavit, a blanket denial that the events

actually transpired as described by the Officers.  Plaintiff
offers no further support for this blanket denial aside from her
own testimony and her testimony, quite frankly, lacks any
credibility.

The untrue statements with which Plaintiff was confronted
in her deposition are numerous and the Court will only highlight
the most relevant.  For instance, apparently unaware that
Defendants had obtained her medical records, Plaintiff denied
that she used any illegal drugs on the night of the incident.
Pl.'s Dep. at 28-29, 65.  The urine analysis conducted at Johns
Hopkins Hospital the next day, however, revealed a positive test
for the presence of cocaine in Plaintiff's system.  Pl.'s Suppl.
Answers to Interrog. No. 17 (ECF No. 61-4).  Before Plaintiff
was aware that Defendant had obtained her personnel records from
her former employer, Plaintiff testified that she was forced to
leave her job because she was unable to work as a result of the
injuries she sustained when she was arrested on August 25, 2013.
Pl.'s Dep. at 17.  Her personnel records, however, show that she
actually lost her job three weeks earlier because of injuries
she sustained in an automobile accident on August 1, 2013.  ECF
No. 61-6.

Concerning that August 1, 2013, accident, unaware the
Defendants had obtained the records from the court proceeding in
which Plaintiff faced DUI charges related to the accident,

11

Plaintiff initially testified in her deposition that her car was rear-ended by another vehicle in a hit-and-run accident, and that her level of sobriety had nothing to do with what happened. Pl.'s Dep. at 34-36, 81. While she states that the car that she was driving was totaled in that accident, Plaintiff testified that she "really didn't have any injuries to speak of," her only injury being a cut above her eye. Id. at 34-35. In fact, the accident was a single car accident where Plaintiff crashed into a guard rail at 35 miles per hour while driving with a blood alcohol level of .24%, a level well above the legal limit of .08%. Id. at 83; Emergency Medical Record (ECF No. 70-2). Although Plaintiff, in her deposition, continued to attempt to downplay the injuries she suffered in the August 1, 2013, accident, it is clear that she suffered more serious injuries. In her email to her then-employer the next day, she said she was in a "bad car accident" and was "pretty badly beaten up." ECF No. 61-6. The injuries were apparently significant enough that she could no longer perform the duties of her employment.

Beyond this deposition testimony which is so riddled with misrepresentations so as to have no weight whatsoever, Plaintiff offers no other evidence to substantiate her claims. Plaintiff provides no testimony or statement from her friend, Mr. Machiran, to substantiate her version of the events. While Plaintiff asserts in her affidavit that, as a result of the

excessive force used by Defendants, she had seven broken ribs,
she offers no medical records in support of that assertion.
Medical records, including x-rays that she claims were taken,
Pl.'s Dep. at 55-56, certainly is evidence that would be readily
available and definitive on the issue of Plaintiff's supposed
injuries.  Defendants' counsel represents that he made repeated
and multiple requests for those medical records but they were
never produced.  ECF No. 70-1 at 3 n.3.  In fact, aside from
Plaintiff's deposition and affidavit, Plaintiff's counsel
submitted nothing in support of Plaintiff's claims that is
specifically related to the incident in question.[5]  It would
appear from the record that Plaintiff's counsel actually made
little attempt to take any discovery in support of Plaintiff's
claims.

"The court shall grant summary judgment if the movant shows
that there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law."  Fed. R.
Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322
(1986)(citing predecessor to current Rule 56(a)).  Summary
judgment is "not a disfavored procedural shortcut, but rather
[is] an integral part of the Federal Rules as a whole, which are

---

[5] Plaintiff's counsel did submit with his Opposition copies of
two general statements of BCPD Policies.  ECF Nos. 67-4, 67-5.

designed 'to secure the just, speedy and inexpensive
determination of every action.'"  Celotex, 477 U.S. at 327
(quoting Rule 1 of the Federal Rules of Civil Procedure).  "The
function of a motion for summary judgment is to smoke out
evidence to see if there is any case, i.e. any genuine dispute
as to any material fact, and if there is no case, to conserve
judicial time and energy by avoiding an unnecessary trial and by
providing speedy and efficient summary disposition."  Bland v.
Norfolk & Southern Railroad Co., 406 F.2d 863, 866 (4th Cir.
1996).

A movant seeking summary judgment has the initial burden of
identifying those portions of the pleadings, depositions,
answers to interrogatories, and admissions on file together with
any affidavits, which it believes demonstrate the absence of any
genuine issues of material fact.  Here, Defendant Officers have
clearly met that burden.  Once that burden has been met, the
non-moving party must respond by presenting cognizable evidence
sufficient to establish genuine issues of dispute as to the
material facts in the case.  The non-movant's failure to present
"affirmative evidence" in this regard is fatal to its position.
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257-58 (1986).
Speculation, conclusory allegations, and the non-movant's
denials are insufficient to raise genuine issues of material
fact.  Matsushita Electrical Industrial Co. v. Zenith Radio

Corp., 475 U.S. 574, 587 (1986).  The party opposing a motion for summary judgment may not rest upon the mere allegations or denials of his pleading but instead must, by affidavit or other evidentiary showing, set out specific facts showing a genuine dispute for trial.  Fed. R. Civ. P. 56(c)(1).

Plaintiff's counsel is correct that credibility determinations are rarely considered on motions for summary judgment.  Plaintiff's testimony in this action, however, is so demonstratively untrustworthy that the lack of any independent evidence in support of that testimony is fatal to her claim. The Court finds that Plaintiff's conclusory allegations and blanket denials alone do not generate a genuine dispute of material fact and on the record before this Court, no reasonable jury could find in Plaintiff's favor.  Accordingly, the Motion for Summary Judgment must be granted.

An order consistent with this memorandum will issue.


_____/s/_____
William M. Nickerson
Senior United States District Judge

DATED: October 31, 2016